TRINETTE G. KENT (State Bar No. 025180)
KENT LAW OFFICES
10645 North Tatum Blvd., Suite 200-192
Phoenix, AZ 85028
Telephone:  (480) 247-9644
Facsimile:  (480) 717-4781
E-mail: tkent@kentlawpc.com

Of Counsel to:
Michigan Consumer Credit Lawyers
22142 West Nine Mile Road
Southfield, MI 48033
Telephone:  (248) 353-2882
Facsimile:  (248) 353-4840

*Attorneys for Plaintiff,*
*Patrick Neill*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patrick Neill, | Case No.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Experian Information Solutions, Inc., an Ohio corporation, Trans Union, LLC a Delaware limited liability company, and I.Q. Data International, Inc., a Washington corporation, | **JURY TRIAL DEMAND** |
| Defendants. | |

1

NOW COMES THE PLAINTIFF, PATRICK NEILL, BY AND THROUGH COUNSEL, TRINETTE G. KENT, and for his Complaint against the Defendants, pleads as follows:

## JURISDICTION

1. Jurisdiction of this court arises under the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681p; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p; and 28 U.S.C. §§1331, 1337.

## VENUE

2. The transactions and occurrences which give rise to this action occurred in the City of Mesa, Maricopa County, Arizona.

3. Venue is proper in the District of Arizona, Phoenix Division.

## PARTIES

4. The Defendants to this lawsuit are:

   a. Experian Information Solutions, Inc. ("Experian"), which is an Ohio company that maintains a registered agent in Maricopa County, Arizona;

   b. Trans Union, LLC ("Trans Union"), which is a Delaware limited liability company that maintains a registered agent in Maricopa County, Arizona; and

c.  I.Q. Data International, Inc. ("I.Q. Data International), which is a Washington corporation that maintains a registered agent in Maricopa County, Arizona.

## **GENERAL ALLEGATIONS**

5.  In September 2014, Plaintiff signed a Lease Agreement with Park Kiely apartments. The terms of the lease were for the months of September 6, 2014 through September 1, 2015. On the lease, it stated that the lease term began on September 6, 2014, and ended on September 1, 2015, and it stated, "at which time this Lease shall terminate without further notice."

6.  In August 2015, Mr. Neill contacted the leasing office of Park Kiely Apartments and informed a representative that he would not be renewing his lease and that his lease term would end on September 1, 2015. The representative informed him that there was nothing else he needed to do.

7.  On August 30, 2015, Mr. Neill signed a Resident's Notice of Intent to Vacate. This stated that he would vacate the apartment on or before August 30, 2015. This document stated, "I understand that I am NOT giving the required written notice and acknowledge that necessary deductions will be made from my security deposit and other fees may be due under the term of my lease."

8.  However, the lease agreement does not specify that Mr. Neill was required to submit a written notice to end the lease early.  Furthermore, according to Park

Kiely's representative, nothing else needed to done after Mr. Neill notified the representative that he would not be renewing his lease. Thus, Park Kiely's representative implied that Mr. Neill did not need to send anything in writing.

9.  On or about October 8, 2016, Mr. Neill obtained his credit files and noticed that I.Q. Data International reported a debt allegedly owed to Park Kiely with account number IQD0GRY1788035079 with a balance of $6,509.00 ("Bogus Trade Line").

10. On or about October 25, 2016, Mr. Neill submitted letters to Experian and Trans Union, disputing the Bogus Trade Line. In these dispute letters, Mr. Neill indicated that he contacted Park Kiely Apartments in August 2015 and informed a representative that he would not be renewing his lease and that the term ended on September 1, 2015. He stated that the representative informed him that there was nothing else he needed to do. He attached a copy of his Lease Agreement, which stated that his lease term would end on September 1, 2015, and it stated, "at which time this Lease shall terminate without further notice." He stated that the Lease Agreement showed that he was not required to give any written notice regarding non-renewal of the release. He also stated that he was always timely with his monthly payments and that he did not owe any money to Park Kiely Apartments or I.Q. Data, and he requested that the Bogus Trade Line be deleted from his credit files.

4

11. Upon information and belief, Experian and Trans Union forwarded Mr. Neill's consumer disputes to I.Q. Data International.

12. On or about November 15, 2016, Mr. Neill received Experian's investigation results, which showed that Defendant retained the Bogus Trade Line and the balance went up to $6,543.00.

13. On or about November 18, 2016, Mr. Neill received Trans Union's investigation results, which showed that Defendant retained the Bogus Trade Line and reported a balance of $6,509.00.

## COUNT I

**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT BY I.Q. DATA INTERNATIONAL**

14. Plaintiff realleges the above paragraphs as if recited verbatim.

15. At all relevant times, Defendant I.Q. Data International, in the ordinary course of its business, regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

16. Plaintiff is a "Consumer" pursuant to the FDCPA, and the account at issue is a consumer debt.

17. Defendant I.Q. Data International is a "debt collector" pursuant to the FDCPA, 15 U.S.C. §1692a(6).

18. Defendant I.Q. Data International's foregoing acts in attempting to collect the alleged debt violated the following provisions of the FDCPA:

a.  15 U.S.C. §1692e2(A) by misrepresenting the character, amount, or legal status of any debt.  Defendant did this when it misrepresented the amount of the debt on Mr. Neill's Experian and Trans Union credit reports; and

b.  15 U.S.C. §1692f(1) by attempting to collect an amount not permitted by law as Mr. Neill does not owe the alleged debt that Defendant is attempting to collect.

19. Plaintiff has suffered economic, emotional, general, and statutory damages as a result of these violations of the FDCPA.

**WHEREFORE**, **PLAINTIFF PRAYS** that this court grant him a judgment against Defendant for actual damages, costs, interest, and attorneys' fees.

## COUNT II

### NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT BY I.Q. DATA INTERNATIONAL

20. Plaintiff realleges the above paragraphs as if recited verbatim.

21. After being informed by Experian and Trans Union of Mr. Neill's consumer dispute of the Bogus Trade Line, I.Q. Data International negligently failed to conduct a proper investigation of Mr. Neill's dispute as required by 15 USC 1681s-2(b).

22. I.Q. Data International negligently failed to review all relevant information available to it and provided by Experian and Trans Union in conducting its

6

reinvestigation as required by 15 USC 1681s-2(b).  Specifically, it failed to

direct Experian and Trans Union to remove the Bogus Trade Line.

23. The Bogus Trade Line is inaccurate and creating a misleading impression on

Mr. Neill's consumer credit file with Experian and Trans Union to which it is

reporting such trade line.

24. As a direct and proximate cause of I.Q. Data International's negligent failure to

perform its duties under the FCRA, Mr. Neill has suffered damages, mental

anguish, suffering, humiliation, and embarrassment.

25. I.Q. Data International is liable to Mr. Neill by reason of its violations of the

FCRA in an amount to be determined by the trier fact together with reasonable

attorneys' fees pursuant to 15 USC 1681o.

26. Mr. Neill has a private right of action to assert claims against I.Q. Data

International arising under 15 USC 1681s-2(b).

**WHEREFORE, PLAINTIFF PRAYS** that this court grants him a judgment

against the Defendant I.Q. Data International for damages, costs, interest, and

attorneys' fees.

## COUNT III

### WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT BY I.Q. DATA INTERNATIONAL

27. Plaintiff realleges the above paragraphs as if recited verbatim.

7

28. After being informed by Experian and Trans Union that Mr. Neill disputed the accuracy of the information it was providing, I.Q. Data International willfully failed to conduct a proper reinvestigation of Mr. Neill's dispute.

29. I.Q. Data International willfully failed to review all relevant information available to it and provided by Experian and Trans Union as required by 15 USC 1681s-2(b).

30. As a direct and proximate cause of I.Q. Data International's willful failure to perform its duties under the FCRA, Mr. Neill has suffered damages, mental anguish, suffering, humiliation, and embarrassment.

31. I.Q. Data International is liable to Mr. Neill for either statutory damages or actual damages he has sustained by reason of its violations of the FCRA in an amount to be determined by the trier fact, together with an award of punitive damages in the amount to be determined by the trier of fact, as well as for reasonable attorneys' fees and he may recover therefore pursuant to 15 USC 1681n.

**WHEREFORE, PLAINTIFF PRAYS** that this court grants him a judgment against the Defendant I.Q. Data International for the greater of statutory or actual damages, plus punitive damages, along with costs, interest, and attorneys' fees.

**COUNT IV**

## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT BY EXPERIAN

32. Plaintiff realleges the above paragraphs as if recited verbatim.

33. Defendant Experian prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Mr. Neill as that term is defined in 15 USC 1681a.

34. Such reports contained information about Mr. Neill that was false, misleading, and inaccurate.

35. Experian negligently failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Mr. Neill, in violation of 15 USC 1681e(b).

36. After receiving Mr. Neill's consumer dispute to the Bogus Trade Line, Experian negligently failed to conduct a reasonable reinvestigation as required by 15 U.S.C. 1681i.

37. As a direct and proximate cause of Experian's negligent failure to perform its duties under the FCRA, Mr. Neill has suffered actual damages, mental anguish and suffering, humiliation, and embarrassment.

38. Experian is liable to Mr. Neill by reason of its violation of the FCRA in an amount to be determined by the trier fact together with his reasonable attorneys' fees pursuant to 15 USC 1681o.

**WHEREFORE, PLAINTIFF PRAYS** that this court grants him a judgment against Experian for actual damages, costs, interest, and attorneys' fees.

## COUNT V

### WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT BY EXPERIAN

39. Plaintiff realleges the above paragraphs as if recited verbatim.

40. Defendant Experian prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Mr. Neill as that term is defined in 15 USC 1681a.

41. Such reports contained information about Mr. Neill that was false, misleading, and inaccurate.

42. Experian willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information that it reported to one or more third parties pertaining to Mr. Neill, in violation of 15 USC 1681e(b).

43. After receiving Mr. Neill's consumer dispute to the Bogus Trade Line, Experian willfully failed to conduct a reasonable reinvestigation as required by 15 U.S.C. 1681i.

44. As a direct and proximate cause of Experian's willful failure to perform its duties under the FCRA, Mr. Neill has suffered actual damages, mental anguish and suffering, humiliation, and embarrassment.

10

45. Experian is liable to Mr. Neill by reason of its violations of the FCRA in an amount to be determined by the trier of fact together with his reasonable attorneys' fees pursuant to 15 USC 1681n.

**WHEREFORE, PLAINTIFF PRAYS** that this court grants him a judgment against Experian for the greater of statutory or actual damages, plus punitive damages, along with costs, interest, and attorneys' fees.

## COUNT VI

## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT BY TRANS UNION

46. Plaintiff realleges the above paragraphs as if recited verbatim.

47. Defendant Trans Union prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding Mr. Neill as that term is defined in 15 USC 1681a.

48. Such reports contained information about Mr. Neill that was false, misleading, and inaccurate.

49. Trans Union negligently failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Mr. Neill, in violation of 15 USC 1681e(b).

50. After receiving Mr. Neill's consumer dispute to the Bogus Trade Line, Trans Union negligently failed to conduct a reasonable reinvestigation as required by 15 U.S.C. 1681i.

51. As a direct and proximate cause of Trans Union's negligent failure to perform its duties under the FCRA, Mr. Neill has suffered actual damages, mental anguish and suffering, humiliation, and embarrassment.

52. Trans Union is liable to Mr. Neill by reason of its violation of the FCRA in an amount to be determined by the trier fact together with his reasonable attorneys' fees pursuant to 15 USC 1681o.


**WHEREFORE, PLAINTIFF PRAYS** that this court grants him a judgment against Trans Union for actual damages, costs, interest, and attorneys' fees.

## COUNT VII

**WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT BY TRANS UNION**

53. Plaintiff realleges the above paragraphs as if recited verbatim.

54. Defendant Trans Union prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Mr. Neill as that term is defined in 15 USC 1681a.

55. Such reports contained information about Mr. Neill that was false, misleading, and inaccurate.

56. Trans Union willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information that it reported to one or more third parties pertaining to Mr. Neill, in violation of 15 USC 1681e(b).

57. After receiving Mr. Neill's consumer dispute to the Bogus Trade Line, Trans Union willfully failed to conduct a reasonable reinvestigation as required by 15 U.S.C. 1681i.

58. As a direct and proximate cause of Trans Union's willful failure to perform its duties under the FCRA, Mr. Neill has suffered actual damages, mental anguish and suffering, humiliation, and embarrassment.

59. Trans Union is liable to Mr. Neill by reason of its violations of the FCRA in an amount to be determined by the trier of fact together with his reasonable attorneys' fees pursuant to 15 USC 1681n.

**WHEREFORE, PLAINTIFF PRAYS** that this court grants him a judgment against Defendant Trans Union for the greater of statutory or actual damages, plus punitive damages along with costs, interest, and reasonable attorneys' fees.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by Jury.

13

DATED: December 9, 2016

KENT LAW OFFICES


By: ___/s/___ *Trinette G. Kent*___
Trinette G. Kent
Attorneys for Plaintiff,
Patrick Neill